IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LARRY TURNER,

       Plaintiff,

v.                                    Civil Case No. 3:13CV486

KENNY D. MITCHELL,

       Defendant.

### Memorandum Opinion

This matter comes before the Court on the defendant's Motion for Summary Judgment. (Dk. No. 18.) The plaintiff, Larry Turner, suffered injuries during his arrest by the defendant, Officer Kenny Mitchell. Turner now asserts a claim under 42 U.S.C. § 1983, alleging that Officer Mitchell used excessive force in violation of the Fourth Amendment's prohibition on unreasonable seizures. Turner also advances a second, state law claim for assault and battery.

The evidence, viewed in the light most favorable to Turner, shows that Officer Mitchell used excessive force in the arrest, in violation of both federal and state law. The Court thus DENIES the defendant's summary judgment motion.

### I. Facts

On April 3, 2013, Turner hosted a cookout at his home, where he got drunk. While drunk, Turner assaulted his son, who reported the incident at the Waverly Police Station.[1] Officer Mitchell then drove the son back to Turner's residence to try to resolve the dispute.

After arriving, Officer Mitchell asked Turner to tell him about the fight, as well as to explain an open fire in the front yard. Turner yelled and cursed at the officer, refused to answer

---

[1] One of Turner's friends also punched the son, but played no role beyond that initial tag-team on the young man.

any questions, and went inside, slamming the door. A short time later, Turner came back outside. When he realized that the police officer had not left, Turner tried to go back inside, but found he had locked himself out. Turner then went around the side of his house, through a carport, to an unlocked side door. Fearing that Turner might have gone inside to get a gun, Officer Mitchell followed Turner inside.

Turner had no weapon. He repeatedly asked the officer to leave his house, eventually "touch[ing]" Officer Mitchell on the elbow in an effort to convince the officer to leave. Officer Mitchell then told Turner that he was under arrest for assaulting a police officer. Turner opened his front door, left the house, and walked toward the street. Officer Mitchell followed, repeatedly reminding Turner that he was under arrest and should stop walking away. Turner continued walking, shouting at Officer Mitchell, "[u]nder arrest for what? . . . Man, I didn't assault you." The slow speed pursuit ended in the street, behind the parked police cruiser.

According to a neighbor,[2] upon reaching the street, "[Turner] stopped, said, 'okay, man, take me on down.' He put his hands behind his back. He backed up to Officer Mitchell." In the sudden quiet, the officer "walked up to [Turner], put the handcuffs on – click, click." Now fully handcuffed, Turner then "looked over his shoulder, and said 'now, why am I under arrest?'" Officer Mitchell responded by "pick[ing] [Turner] up and slamm[ing] him on his face straight to the road – pow – slammed him to the road."[3]

Turner suffered an orbital fracture and facial lacerations to his face as a result.

## II. Discussion

In deciding a motion for summary judgment, the Court must resolve all genuine factual disputes and inferences in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S.

---

[2] The neighbor's version of the events is crucial because Turner cannot remember what happened after he left his house to avoid Officer Mitchell.

[3] Officer Mitchell disputes Turner's (and Turner's neighbors') account of the incident.

654, 655 (1962) (per curiam).   The Court cannot weigh the evidence or make credibility determinations in its summary judgment analysis.  *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004).   Ultimately, the relevant inquiry in a summary judgment analysis consists of "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

### A. Qualified Immunity

Qualified immunity protects public officers from §1983 liability for actions taken that do not violate clearly established and well-known law.   A claim of qualified immunity raises two questions: (1) whether the plaintiff has alleged facts establishing the "violation of a constitutional right," and (2) whether that constitutional right "was 'clearly established' at the time of the defendant's misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal citation omitted).   It does not matter in what order the Court addresses the questions.  *Id.* at 236.   If the answer to either question is "no," the officer wins the case.

### 1. Violation of a Constitutional Right

"The Fourth Amendment prohibition on unreasonable seizures bars police officers from using excessive force to seize a free citizen." *Jones v. Buchanan,* 325 F.3d 520, 527 (4th Cir. 2003). The Court must apply an "objective reasonableness" standard in judging the propriety of the amount of force used.   As the Supreme Court has said, the Court must weigh the extent of the alleged Fourth Amendment violation against the "countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 399 (1989).   In plain English, this means that the Court must decide whether the officer had good reason to use a particular amount of force.    *Jones*, 325 F.3d at 527 (citing *Graham*, 490 U.S. at 396-97).

3

The amount of force an officer may use will vary depending on the "facts and circumstances of each particular case." *Graham* at 396. For instance, if a suspect has shot a gun at the officer, the officer may use lethal force—firing his own gun—in response. But if the suspect has simply cursed at the officer, the policeman may only apply a greatly reduced degree of force (if any). The Supreme Court has emphasized three especially important factors in weighing the amount of force permissible: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.*

Turner did not commit a serious "crime." During the unfortunate encounter, Turner was drunk, loud, profane, and decidedly hostile to Officer's Mitchell's attempts to resolve the situation. At most, however, Turner's "assault" on Officer Mitchell amounted to a "touch" of the officer's arm. Perhaps Turner's conduct technically amounted to a crime, but the first *Graham* factor weighs in favor of finding that Officer Mitchell went too far.[4]

In weighing the remaining two factors – whether Turner posed an immediate threat to Officer Mitchell's safety, and whether Turner's actions showed that he might resist arrest or flee – Turner's evidence shows that Officer Mitchell had completely handcuffed Turner from behind. Given his shackles, Turner could not have endangered Officer Mitchell. Nor could a handcuffed and intoxicated Turner flee very far. Officer Mitchell knew Turner did not have a weapon, and had no reason to fear, by this point, that he might be able to obtain one.[5] Whatever problems Turner might have posed, they did not require depositing him face-down into the pavement.

---

[4] The Commonwealth apparently concurs, having chosen not to press charges against Turner. A finding that the plaintiff has committed a minor offense does not bar a finding that the first Graham factor still favors plaintiff. *See Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994).

[5] *See, e.g., Rowland*, 41 F.3d at 174 (Upholding a refusal to grant summary judgment to a police officer in a § 1983 excessive force case when the plaintiff was neither armed nor suspected by the officer of being armed).

In response to Turner's argument, Officer Mitchell maintains that the Court should not give credence to the accounts of Turner (who was drunk) or his witnesses (who watched the encounter from their porch steps, on a dark night with little street lighting). The Court cannot weigh the evidence or make credibility determinations in its summary judgment analysis, so Officer Mitchell's arguments cannot carry the day. *Williams*, 372 F.3d at 667.

The record before the Court shows that Officer Mitchell's takedown amounted to excessive force, and constituted a violation of Turner's Fourth Amendment rights.

### 2. Right Clearly Established

Turner's "right was clearly established' at the time of the events at issue." *Jones*, 325 F.3d at 526 (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)). Faced with a suspect who faced only a minor charge, who did not threaten the officer's safety, and who did not pose a threat of flight, any police officer should have known that he could not slam the suspect to the pavement. *See, e.g., Rowland*, 41 F.3d at 174.

This right was clearly established, so qualified immunity cannot protect Officer Mitchell.

The Court denies Officer Mitchell's motion for summary judgment on Count 1.

### B. State Law Claim

Officer Mitchell attacks Turner's state law claim on two grounds: (1) that Turner's claim for assault and battery must fail because the physical actions that gave rise to those claims were legally justified; and (2) that because Officer Mitchell acted in "good faith" during the incident, he is entitled to the benefit of Virginia's good faith immunity doctrine.

Under Virginia law, the torts of assault and battery are defeated if a police officer had legal justification for the act giving rise to the claim. *See Koffman v. Garnett,* 265 Va. 12, 16 (2003). A police officer may lawfully use *reasonable* force to arrest a suspect. *See Pike v. Eubank*, 197 Va. 692, 698 (1956) (emphasis added). Viewed in the light most favorable to Turner, the evidence

paints a picture of a police officer using unnecessary, disproportionate force to "slam" an unresisting, handcuffed individual to the pavement.  Officer Mitchell's actions were not reasonable, and thus without legal justification.

Similarly, the Court dismisses Officer Mitchell's "good faith immunity" argument. Regardless of the scope of the protection that such immunity may offer a defendant, these facts do not entitle Officer Mitchell to its safe harbor.[6] Officer Mitchell's forceful takedown of Turner, when that individual was unresisting, unarmed, and fully secured, cannot be contorted into the type of "emergency" situation that might tempt a Court to excuse an officer's momentary lack of "cool and deliberate judgment." *See Davidson v. Allam*, 143 Va. 367, 373 (1925).  When an officer's actions are motivated "by anger or malice," the officer faces liability if he injures a person being arrested. *Id.* Officer Mitchell had no reason to violently slam Turner to the ground, and he could not reasonably have believed that his actions were necessary or permissible.

The Court thus denies Officer Mitchell's motion for summary judgment as to Count 2.

## IV. Conclusion

For the reasons discussed above, the Court DENIES the defendant's motion for summary judgment as to both Counts 1 and 2.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall issue.

Date: April 8 , 2014
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

---

[6] *See Lee v. Marks*, No. 3:11-cv-815, 2013 WL 775379, at *8 (E.D. Va. Feb. 28, 2013) ("The Court does not believe that Virginia recognizes such broad brush immunity. While Virginia courts often use the words 'good faith,' in excessive force decisions, it is typically coupled with some form of 'reasonable.' *See e.g,. Davidson v. Allam,* 130 S.E. 245, 373 (1925)."

6